## Gomer Davis, Appellee, v. Missouri & Illinois Coal Company, Appellant.

1. MINES AND MINERALS, § 131*—*when miner's notice of dangers does not prevent recovery for injuries.* In an action by a miner for injuries alleged to have resulted from wilful failure of defendant to have its mine examiner mark the dangerous condition of places in the mine, *held* that the fact that plaintiff had actual notice of the dangerous condition of the place where he was in-

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

jured did not prevent him from recovering under the statutory counts in the declaration, but that he was not entitled to recover under a common-law count.

2. MINES AND MINERALS, § 125*—*effect of provisions in statute requiring miner to examine working place.* Paragraph 6 of section 23 of Miners' Act of 1911, J. & A. ¶ 7497, providing that every miner shall sound and thoroughly examine the roof of his working place, etc., *held* not to relieve the operator of any duty enjoined upon him under the act.

3. MINES AND MINERALS, § 181*—*when proximate cause of injury question for jury.* In an action for injuries sustained in a mine alleged to have resulted from wilful failure of defendant to have its mine examiner mark the dangerous condition of places in the mine, *held* that under the evidence the court properly submitted the question of the proximate cause of plaintiff's injury to the jury.

4. APPEAL AND ERROR, § 1778*—*effect of failure to exclude evidence under a count not proved.* A judgment should not be reversed on account of the failure to exclude evidence under a count in the declaration not proved, where there are other counts in the declaration that are proved.

Appeal from the Circuit Court of St. Clair county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 1, 1914.

BARTHEL, FARMER & KLINGEL, for appellant.

J. R. McMURDO and SCHAEFER & KRUGER, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

The appellee recovered a judgment in the Circuit Court of St. Clair county, Illinois, for one thousand five hundred dollars on account of an injury received by him on October 26, 1912, and while engaged at work as a miner in appellant's coal mine, which judgment appellant seeks by this appeal to reverse.

The declaration in this case consists of three statutory counts and one common-law count. The first count charges that appellant on the day aforesaid,

and for twelve hours preceding the same, wilfully failed to have its mine examiner place a conspicuous mark or sign at the working place of plaintiff as notice to him to keep out and to mark the dangerous condition aforesaid as required by statute, and then alleges that while plaintiff was in the performance of his duties a large quantity of over-hanging slate, coal, etc., fell from the roof of said room and injured plaintiff's foot and ankle.

The second count alleges that a dangerous condition existed in the room of plaintiff's working place and that said condition could have been discovered by an examination made by a competent mine examiner, and that the mine manager wilfully failed and omitted to withhold plaintiff's entrance check until he advised plaintiff of the danger in his said working place, and wilfully failed and omitted to advise plaintiff of said danger and instruct him not to work thereunder until the dangerous condition had been removed.

The third count alleges that the dangerous condition aforesaid existed and that it could have been discovered by an examination duly made, and that on the day aforesaid and for twelve hours preceding, the defendant wilfully failed and omitted to have its mine examiner make an examination of plaintiff's working place, as required by statute; and concludes substantially the same as the first count.

The fourth count is a common-law count, which alleges the existence of the aforesaid dangerous condition in the roof of appellee's room, and charges that such dangerous condition was capable of being remedied by propping; that there were certain props in said room but that they were too long; that appellant's mine manager had directed appellee to ask him for a man to saw off such props whenever he should be in need of props; that on the day of the accident appellee did ask the mine manager for a man for that purpose but that said mine manager negligently failed to send such a man, and that while plaintiff was in the

exercise of due care for his own safety he was injured by the falling of the slate from the roof as aforesaid.

The evidence in this case is quite conflicting. It appears from the testimony of witnesses for appellee that he had two working places in his room, one at the cross cut and the other at the face of the room. That he had been at work for several days in the cross cut, cleaning up and loading the coal therefrom; that he finished the work in the cross cut about noon of October 26th and at about 1:30 o'clock in the afternoon he began work at the face of the room, at from five to seven feet back from the face; that in the roof, the slate was loose and had drawn away from the top rock; that the coal had been shot from under this slate and allowed it to sag down and that it had been in this condition ever since the coal had been shot from it, about eight or ten days. That about ten o'clock of the morning of that day appellee went to the face of the room to examine it and there found, as he states, the roof of the room to be in the condition above described, and that just before he was hurt he sounded the roof with his pick and it sounded drummy and was drawn, and he says: "Just before I was hurt I sounded this room with my pick, and it sounded drummy and I saw it was drawn. I did not see any danger mark on it; there was no danger marks on it and I took it for granted I would be safe to go under there because they employed a mine inspector." That he loaded coal under this roof until about 3:15 o'clock, when the slate from the place above described fell upon him and injured his foot and ankle very badly, and otherwise hurt him. He also says that there were no marks whatever in that room, either to show that the mine examiner had been in the place or that he had inspected the slate. On cross-examination he says, the roof indicated it was not safe; it was possible to hold up six months when in this condition; that this accident happened four or five feet from the face of the room, which was solid. Appellee further says that on

July 27, 1912, the mine closed down and quit work until September 25th, and in the meantime he was engaged at work at other places. That when he resumed work in September he was placed back in the same room that he had at the time he quit work. There were several crossbars in his room but they were too long to be used for props, and that Henry Helfrich, who was pit boss at that time, told appellee to use these crossbars for props and that when he needed to use one to let him know and he would send a man to cut it off the proper length. That when the mine resumed operation in September the pit boss was changed and Mr. Lloyd was then acting as pit boss. That on the morning of the day of the accident appellee sent word to the pit boss to send a man to saw off some of these crossbars. This, however, is denied by the pit boss, and appellee is sustained as to this promise by John Tolen. John Morgan testified that the top or roof of the room was loose on the day before the accident and that he so told appellee; that he saw no marks of any kind in the room; that he told Lloyd that Davis wanted him to send some one to saw off the crossbars and Lloyd said: ''They are always wanting something; I will see what I can do for them.'' This, however, is denied by Lloyd. James File, buddy of Davis, says that the roof was loose and drummy on Thursday before Davis was hurt on Saturday. He also testified that, ''There were no chalk marks in this place and I never saw any mine examiner's marks in that room.'' On behalf of appellant, Thomas Lloyd, the mine examiner, testified that he was in that room on the morning of the day of the accident and before the men went down to work and examined it and that he put the date of his examination on the rib, or wall; that at that time the roof was solid and sounded all right to him and that he did not mark it dangerous because it was not in a dangerous condition. He also testified that there were several props in this room of proper dimensions and says that as they took Davis

out of the mine that Davis told him he sounded the roof of the room and that it was all right. This, however, is denied by Davis, also by Morgan who claims to have been with Davis at that time. Martin Kirkwood, the mine manager, says he found twenty-three props in that room and that seven of them were six and a half feet long and were of proper height, and that Davis while at the hospital told him he sounded the roof before he went to work and it sounded all right. Ernest Goring also says that Davis told Kirkwood the roof was all right. Rush Alexander says that he heard Davis say something to Lloyd about the roof. He also says that on Monday morning he counted the props in this room and there were twenty-three. Julius Pfeiffer, the driver, says he hauled props in that room about one week before Davis was hurt. John Rauth, the superintendent, says that on Monday he found marks on the rib of the room. On rebuttal, File and Davis deny that any props were brought into the room within a week or ten days before Davis was injured. This is substantially the testimony offered by the respective parties on the trial of this cause.

The appellant contends that the court erred in refusing to give a peremptory instruction at the close of the evidence. First: For the reason, as to the statutory counts, that the matters averred and proved were not the proximate cause of appellee's injury. The argument of counsel is that the purpose of requiring the mine examiner to mark the dangerous places is to give notice to the miner of the danger and that notice obtained from any other source would be just as effective for that purpose, and insists that it follows that as appellee knew of the dangerous character of the roof, and worked under it with that knowledge, and being a practical miner and knowing that it was liable to fall at any time, that he had all the notice necessary; that he knew everything that the mine examiner's mark or the advice of the mine manager could give

concerning the condition of the room. The reasoning of counsel upon this point is very forceful when the notice alone is considered, but the statute goes further and requires a mine examiner, when a dangerous condition exists in a room, to take the miner's check and deliver it to the mine manager who shall withhold it until all dangerous conditions in the room are made safe and not permit miners to enter into the room except for the purpose of making it safe. But this, however, is not a new question in the courts of this State, as it is said by the Supreme Court in the case of *Mertens v. Southern Coal & Mining Co.*, 235 Ill. 546: "as it is urged the only object of an examination of the room by the mine examiner, the marking of dangerous places found therein, the indicating of such dangerous conditions in the record required to be kept by the mine examiner, and the reporting of such conditions to the mine manager, is, that the men working in the mine may have notice of such dangerous conditions and by reason of such notice be enabled to protect themselves from injury, and that as it appears that the appellee had actual notice of the dangerous condition of said roof and thereafter went into said room and was injured by the falling of a portion of the roof, the actual notice which he had relieved appellant from complying with the statute in the particulars hereinbefore pointed out. In other words, it is contended that all that was necessary to relieve the appellant from liability for the results of the falling of the roof in said room was that it appeared that the appellee had notice of its dangerous condition when he went into the room, and that actual notice of such condition was equivalent to, and took the place of, the notice required to be given him by the statute.

This court has repeatedly held that contributory negligence on the part of a miner while at work in a mine will not defeat a right of recovery where he is injured by a wilful disregard of the provisions of the Mines and Mining act, either by an act of omission or commission

on the part of the owner, operator or manager of the mine; (*Spring Valley Coal Co. v. Patting*, 210 Ill. 342); and to hold as the appellant contends we should hold, would be to defeat the appellee's right of recovery by reason of his contributory negligence in going into the room knowing it to be in a dangerous and unsafe condition." The evidence of the witnesses for appellee fairly tended to show that this roof was in a dangerous condition. That a proper examination thereof would have determined it to be such; and we believe that the question as to whether or not this was the proximate cause of the injury was a question of fact for the jury, and under the conflicting evidence in this case we cannot say that the court erred in refusing to grant a new trial upon the weight of the evidence.

Again, it is said by the Supreme Court in the case of *Henrietta Coal Co. v. Martin,* 221 Ill. 468: "Appellant urges, however, that even if the examiner did not comply with the statute in this respect, his failure so to do is not the proximate cause of this accident. The evidence shows that if the examiner had properly examined the entry where appellee and Zak worked he would have found the roof to be dangerous, and had he made a record to that effect and placed the conspicuous marks required by the law, it is fair to presume that appellee and Zak would not have been permitted to enter, and would not have entered, (for the purpose of mining), the place where they worked, until after the conditions there had been made safe." In this case, if the mine examiner had examined the roof of this room and found the dangerous conditions that the evidence tends very strongly to show did exist, and if he had then on arriving at the top taken the check of appellee and delivered it to the mine manager, then the mine manager's special attention would have been called to this condition and he would in all probability have kept appellee out of the room until the dangerous condition was made safe. Under the evidence produced upon the trial of this case we are of

the opinion that the court properly submitted the question of proximate cause of appellee's injury to the jury.

It is next contended that since the rendition of the decision above referred to and on July 1, 1911, the legislature enacted a new mining law, which provided in paragraph 6 of section 23 (J. & A. ¶ 7497), thereof: "Every miner shall sound and thoroughly examine the roof of his working place before commencing work, and if he finds loose rock or other dangerous conditions, he shall not work in such dangerous place except to make such dangerous condition safe. It shall be the duty of the miner to properly prop and secure his place for his own safety with materials provided therefor," and that this provision casts the duty upon the miner to examine his own working place. While this section of the statute does provide that the miner shall examine his working place, there is nothing in it, or anywhere in the statute, that relieves the operator under such circumstances from the duty enjoined upon him by this act, which provides in section 29 thereof (J. & A. ¶ 7503): "For any injury to persons or property occasioned by any wilful violation of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby." It will also be observed that by division "A" of the same section, a penalty is provided, in addition to such liability, for any neglect or failure to do any of the things enjoined by this act. Negligence is of two kinds: That arising at common law for failure to do or negligently performing things that a reasonably prudent man should do or omit. *Putney v. Keith*, 98 Ill. App. 285. Also a failure to perform a duty commanded by statute may be properly denominated negligence *per se*. *Chicago & E. I. R. Co. v. Goyette*, 133 Ill. 21. This being a duty enjoined upon the miner by the statute, his failure to perform that duty would, as we believe, be simply negligence. It is true it is statutory, but there is no distinction made between statutory or common-

law negligence by the decisions of our courts, which
hold that under the Miners' Act contributory negli-
gence by the plaintiff would not defeat a wilful failure
of the operator to perform a duty enjoined upon him
by the statute. The court did not err in its refusal
to exclude the testimony as to these several counts of
the declaration, and as the evidence was conflicting,
as to the conditions that did exist, it was for the jury
to determine where the weight of the evidence rested;
and we do not see that the evidence offered by appel-
lant was of such character and weight as to warrant
the presiding judge in saying that the verdict of the
jury was manifestly against the weight of the evidence,
and the court did not err in overruling the motion for
a new trial.

It is next contended by counsel for appellant that the
court erred in not excluding the evidence and in not
directing a verdict for the defendant as to the fourth
or common-law count of the declaration. We are of
the opinion that this contention is well founded. Un-
der this count it was as necessary for the plaintiff to
prove that he was in the exercise of due care and cau-
tion for his own safety as to prove defendant's negli-
gence. It appears from this evidence clearly that the
appellee knew of the dangerous condition of this roof
when he was engaged at work thereunder, which was
clearly contributory negligence, and being so he was
not entitled to recover upon this count of the declara-
tion. We are satisfied, however, from an examination
of this case, that the appellee was entitled to recover
under the statutory counts, and under the rules as re-
peatedly laid down by the Supreme and Appellate
Courts, that even though there may be a count in the
declaration not proved, if there are other counts in
the declaration that are proved, the judgment should
not be reversed on account of the failure to exclude the
evidence under such count, but that judgment may be
rendered and sustained under the counts that have
been proved.

One of the questions raised in this argument is as to the right of a plaintiff to recover from defendant on account of a violation of a statutory duty while he, himself, was at the same time acting in violation of a statute. This is a new question and so far as we know, or the attention of the court has been called to it, has never been passed upon by any of the courts of this State, but we believe that the statutory requirement of the miner to sound his roof may be properly held to be an additional precaution provided by the legislature for the safety of the miner, and should not be held to relieve the operator of any duty enjoined upon him under this statute. This statute and the constitutional amendment upon which it is based are both to be construed liberally for the safety of men employed in the hazardous occupation of mining.

We find no reversible error in this record, and hold that the judgment of the lower court should be affirmed.

*Judgment affirmed.*